SH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Leo Davis,<br><br>              Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>              Defendants. | No. CV 17-01946-PHX-SMB (BSB)<br><br>**ORDER** |

Plaintiff John Leo Davis, who is currently confined in Maricopa County Jail, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 20.) Pending before the Court are the Report and Recommendations (R&R) of Magistrate Judge Bridget S. Bade addressing Plaintiff's First Amended Complaint (FAC) (Doc. 21)[1] and recommending that Defendant Elias be dismissed for failure to serve (Doc. 36). Also before the Court are Defendant Anderson-Mata's Motion for Summary Judgment (Doc. 53)[2] and Plaintiff's Motions to Strike (Docs. 69, 71). Plaintiff opposes the Motion for Summary Judgment. (Doc. 63.)[3]

---

[1] The R&R screened Plaintiff's FAC filed at Doc. 20. (*See* Doc. 21.) Plaintiff subsequently re-filed his FAC at Doc. 22. For the purposes of this Order, the Court will cite to the FAC filed at Doc. 20.

[2] Because Plaintiff's claims against Defendant Anderson-Mata in the FAC mirror his claims in the original Complaint, and Defendant Anderson-Mata was served a copy of the original Complaint (Doc. 8), the Court will address Defendant Anderson-Mata's Motion for Summary Judgment even though he has not been served the FAC.

[3] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 57.)

The Court will accept and modify the R&Rs as discussed herein, and Defendants Elias, A6941, Miceli, Murphy, Hollingshead, Tijerina, Fisk, and Karas must answer Plaintiff's First Amendment and due process claims alleged in the FAC. The Court will grant Defendant Anderson-Mata's Motion for Summary Judgment and dismiss her from the action and deny Plaintiff's Motions to Strike.

**I.     Pending R&Rs**

**A.     Legal Standard**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *accord Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna– Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.,* 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R & R] to which objection is made.").

**B.     January 11, 2018 R&R**

On January 11, 2018, Magistrate Judge Bade issued an R&R screening Plaintiff's FAC and recommending that the Court find that Plaintiff stated First Amendment claims against Defendants Elias, A6941, Miceli, Murphy, Anderson-Mata, Hollingshead, Tijerina, Fisk, and Karas in Counts One, Three, Five, and Seven. (Doc. 21 at 5.) Magistrate Judge Bade also recommended that the Court find that Plaintiff stated due process claims against these same Defendants in Counts Two, Four, Six, and Eight. (*Id.*) The time to file

objections to this R&R has expired, and neither party filed objections. The Court is therefore not obligated to review the R&R. *See Reyna-Tapia*, 328 F.3d at 1121; Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). Even so, the Court has reviewed Judge Bade's R&R and incorporates and adopts it. However, because Defendant Anderson-Mata's Motion for Summary Judgment is being granted, the Court will modify the portion of the R&R recommending that Defendant Anderson-Mata answer the FAC and instead dismiss Defendant Anderson-Mata from the action. The Court will therefore order Defendants Elias, A6941, Miceli, Murphy, Hollingshead, Tijerina, Fisk, and Karas to answer Plaintiff's First Amendment and due process claims as recommended in the R&R.

### C. March 12, 2018 Report and Recommendation

On March 12, 2018, Magistrate Judge Bade issued an R&R recommending that Defendant Elias be dismissed without prejudice for failure to serve. (Doc. 36.) On March 30, 2018, Plaintiff filed an objection to the R&R. (Doc. 39.)[4] In light of Plaintiff's FAC, which the Court has now screened and determined states claims against Defendant Elias, the Court will modify the R&R to extend the deadline for serving Defendant Elias.

## II. Motion for Summary Judgment

In Counts Three through Eight of the FAC, Plaintiff brings First Amendment and due process claims against Defendant Maricopa County Detention Officer Anderson-Mata and alleges that on November 8 and December 20, 2016, Defendant rejected Plaintiff's December 2016 and January 2017 issues of Cosmopolitan magazine, and on February 14, 2017, Defendant rejected his March 2017 issue of Marie Claire. (Doc. 20 at 11–24.) Plaintiff alleges that Defendant returned the magazines to the publisher before he could appeal the rejections. (*Id.*) Defendant moves for summary judgment on the grounds that

---

[4] Plaintiff indicates that he did not receive the R&R until March 16, 2018. (Doc. 39 at 2.) The Court will therefore consider the objection timely filed.

the rejection of the magazines did not violate Plaintiff's constitutional rights and that she is entitled to qualified immunity. (Doc. 53.)

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . .

**B.     Relevant Facts**

Maricopa County Sheriff's Office (MCSO) policy DK-1 governs inmate mail and allows MCSO inmates to subscribe to publications as long as the publications do not "interfere with legitimate penological objectives (e.g. deterrence of crime, good order of the facility, threaten jail safety, to ensure an environment free of sexual harassment, etc.)[.]" (Doc. 54-1 at 18 (Policy DK-1 ¶ 1(E)).) Restricted subject matter includes "[d]rawings or photographs depicting nudity or sexual conduct." (*Id.* ¶ 1(E)(5).) The policy defines "nudity" as:

> The showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state, as specified in ARS § 13-3501(4).

(*Id.* at "Definitions".) The policy defines "sexual conduct" as "[a]cts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person is a female, breast, as specified in ARS § 13-3501(7)." (*Id.*) Incoming publications are reviewed on a case-by-case basis, and if a publication is determined to violate policy, the mailroom staff must send a Mail Rejection Notification form to the inmate recipient. (*Id.* ¶ 1(F).) The inmate may appeal the rejection through the jail's grievance procedure. (*Id.*) Section 17 of the MCSO Rules and Regulations for Inmates prohibits inmates from receiving incoming mail that contains nudity or sexual conduct. (Doc. 54-1 at 23.) Plaintiff received a copy of the Rules and Regulations on March 27, 2015. (*Id.* at 26.)

On November 8, 2016, Defendant issued a Mail Rejection Notification to Plaintiff regarding the December issue of Cosmopolitan magazine. (Doc. 64 at 26.) The magazine was rejected for containing nudity and sexual conduct as defined in policy DK-1, and the notice gave the reason for the rejection as "[n]udity, sexual acts or touching of clothed or

unclothed genitals is not authorized." (*Id.*)[5] Defendant provided the Court with copies of the pages that violated policy DK-1. (Doc. 59 at 8–11.) The Court has reviewed the pages, and they contain several drawings of naked individuals having sexual intercourse and a photo of a woman with her naked buttocks exposed. (*Id.*)

On December 20, 2016, Defendant issued a Mail Rejection Notification to Plaintiff regarding the January issue of Cosmopolitan. (Doc. 64-1 at 7.) The magazine was rejected for containing nudity and sexual conduct as defined in policy DK-1, and the rejection notice provided the same explanation as the November 8, 2016 rejection notice. (*Id.*) The Court has reviewed the prohibited pages, and they depict several drawings of naked individuals having sexual intercourse and a photo of a partially-dressed couple engaged in sexual intercourse. (Doc. 59 at 14–24; Doc. 59-1 at 1–2.)

On February 14, 2017, Defendant issued a Mail Rejection Notification to Plaintiff regarding the March issue of Marie Claire magazine. (Doc. 64-1 at 20.) The stated reason was identical to the November 8 and December 20, 2016 rejection notices. (*Id.*) Defendant added a comment stating "March issue MarieClair [sic] page 32 nipple's [sic] showing not

---

[5] This is the language from the rejection notices that Plaintiff received, which were printed either the same day as, or the day after, the rejection date. (*See* Doc. 64 at 26; Doc. 64-1 at 7, 20.) Plaintiff asserts that the Mail Rejection Notifications that Defendant provided to the Court were fraudulently altered. (Doc. 64 ¶¶ 3, 5, 7.) The rejection notices Defendant provided to the Court, which were printed on November 9, 2017, state as follows:

> The showing of the male/female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion below the top of the nipple or the depiction of covered male genitals in a discernibly turgid state, as specified in ARS § 13-3501(4). Sexual acts or touching of clothed or unclothed genitals is not authorized.

(Doc. 54-1 at 7, 10, 13.) Although Defendant's copies of the notices contain a more detailed explanation for the rejections that more closely tracks the language of policy DK-1, the essence of the rejections is the same as those provided to Plaintiff, namely, that the magazines were rejected for containing nudity and/or sexual conduct in violation of policy DK-1. For the purposes of this Order, the Court will accept as true that the rejection notices contained the language in the copies provided by Plaintiff.

allowed in." (*Id.*)  The Court reviewed the prohibited page, and it shows a model wearing a dress that consists of a mesh-type top, through which her breasts and nipples are clearly visible.  (Doc. 59-1 at 5.)

Plaintiff states that, after he received the rejection notices, he filed administrative grievances and pursued "all administrative appeals" for each of the rejections.  (Doc. 64 ¶¶ 4, 6, 8.)  Plaintiff attached the relevant grievance forms to his response.  (*See* Doc. 64 at 30–38; Doc. 64-1 at 1–5, 11–18, 24–32.)  At the final grievance appeal level, the External Referee determined that all three of the rejections made by Defendant were in accordance with policy DK-1 and did not violate Plaintiff's constitutional rights.  (Doc. 64 at 30–33; Doc. 64-1 at 11–13, 24–26.)  Defendant asserts that the prohibited pages from all three magazines were shown to Plaintiff on July 17, 2018 in conjunction with the current lawsuit. (Doc. 54 (Def.'s Statement of Facts) ¶¶ 4, 6, 8.)[6]

### C. First Amendment Claim

#### 1. Legal Standard

Inmates enjoy a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  But inmates' First Amendment rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam).  A regulation that impinges on an inmate's First Amendment rights is valid if that regulation "'is reasonably related to legitimate penological interests.'" *Frost v. Symington*, 197 F.3d 348, 354 (9th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).  Deterring criminal activity and maintaining prisoner security are legitimate penological interests that justify regulations on prisoner mail.  *O'Keefe v. Van Boening*, 82

---

[6] Defendant does not provide any evidentiary support, such as an affidavit, for this stated fact.  However, Plaintiff affirms "that on 7/17/18, the Defendant's attorney, showed the Plaintiff" pictures of the prohibited pages from each rejected magazine. (Doc. 64 (Pl.'s Statement of Facts) ¶¶ 4, 6, 8.)  The Court will therefore accept this fact as undisputed. Plaintiff argues that he has no way of knowing whether the pictures he was shown on July 17, 2018 are the same pictures that Defendant filed under seal with the Motion for Summary Judgment.  (*See id.*)  But, Plaintiff does not deny, and his evidence does not dispute, that the rejected magazines contained nudity and/or sexual conduct as prohibited by policy DK-1.

F.3d 322, 326 (9th Cir. 1996).

To determine the validity of a regulation, courts apply the test established under *Turner v. Safely*, which considers four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest the regulation is designed to protect; (2) whether the prisoner has alternative means of exercising the right at issue; (3) the impact any accommodation would have on guards, other inmates, and allocation of prison resources; and (4) whether there are "ready alternatives" for furthering the government interest, which would suggest that the regulation is an exaggerated response to the jail's concern. *Turner*, 482 U.S. at 89-90. In addition, the Supreme Court recognizes that there are greater security concerns for incoming mail than for outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

This is a very deferential standard; courts must give "substantial deference to the professional judgment of prison administrators." *Beard v. Bank*, 548 U.S. 521, 528 (2006) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). A court does not have to agree with the officials' proffered legitimate penological interest. *Frost*, 197 F.3d at 355. The inquiry under *Turner* is not whether the policy actually serves a penological interest, but rather whether it was rational for jail officials to believe that it would. *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).

### 2. *Turner* Analysis

First, the Court must determine whether the governmental objective underlying policy DK-1's exclusion of publications containing nudity and/or sexual conduct is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective. *Thornburgh*, 490 U.S. at 414. "In the prison context, regulations that apply to specific types of content due to specific inherent risks or harms are considered to be content neutral. *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004).

Here, policy DK-1's exclusion of material containing nudity and/or sexual conduct serves the legitimate penological objectives of maintaining security and the good order of the facility, ensuring an environment free of sexual harassment, and preventing

publications that could be detrimental to jail safety from entering the facility. (Doc. 54-1 at 18 (Policy DK-1 ¶ 1(E).) *See Mauro*, 188 F.3d at 1059 (jail security and reducing sexual harassment are legitimate penological interests). Further, the policy is neutral on its face—there is nothing to indicate that the aim of the policy is to suppress expression. *Thornburgh*, 490 U.S. at 415-16 ("the regulation or practice in question must further an important or substantial government interest unrelated to the suppression of expression"). Finally, "[t]o show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future." *Mauro*, 188 F.3d at 1060 (citation omitted). As long as officials "might reasonably have thought that the policy would advance its interests[,]" the *Turner* standard is met. *Id.* Here, the rational relationship between policy DK-1 and the objectives sought to be addressed by the policy—security, safety, and the avoidance of sexual harassment— "is not so 'remote as to render the policy arbitrary or irrational.'" *Mauro*, 188 F.3d at 1060 (citation omitted).

Plaintiff has not refuted Defendant's evidence regarding policy DK-1. Instead, Plaintiff argues that based on this Court's analysis in *Broulette v. Starns*, Defendant's actions in the present case violated Plaintiff's constitutional rights. (*See* Doc. 63 at 14.) *Broulette*, 161 F. Supp. 2d 1021 (D. Ariz. Aug. 27, 2001). However, *Broulette* involved the application of the *Hook* Consent Decree, which "guaranteed that inmates in the Arizona Department of Corrections [ADC] would receive publications unless those publications . . . contained any material which is deemed obscene under applicable constitutional standards." *Id.* at 1023. Here, Plaintiff is not in ADC custody, and his publications were not rejected for being "obscene," which has a different statutory definition that "nudity" or "sexual conduct." *See* Ariz. Rev. Stat. § 13-3501(2). Thus, Plaintiff's argument does not apply in this situation. On these facts, the first factor of the *Turner* analysis weighs in Defendant' s favor.

Second, the Court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. "Where other

avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Bahrampour*, 356 F.3d at 975. When analyzing the second *Turner* factor, the Court must view the right in question "sensibly and expansively." *Thornburgh,* 490 U.S. at 417 (citation omitted).

Viewing Plaintiff's right "sensibly and expansively," the second factor of the *Turner* analysis has been satisfied. Under policy DK-1, Plaintiff is permitted to receive non-offending issues of his subscribed publications as well as other publications that do not contain prohibited sexual conduct or nudity. (*See* Doc. 54-1 at 18 (Policy DK-1 ¶ 1(E)).) *See Thornbugh*, 490 U.S. at 401 (where regulation bans sexually explicit material that threatens institutional security, alternative avenues are available where "the regulations [at issue] permit a broad range of publications to be sent, received, and read"). Further, it appears that Plaintiff also has the alternative option of receiving sexually explicit *written* materials since policy DK-1 only prohibits pictorial depictions and not text. Accordingly, the second *Turner* factor weighs in Defendant's favor.

Third, the Court must consider the impact on the prison and other inmates if inmates were allowed to receive correspondence that contains prohibited sexual conduct or nudity. *Turner*, 482 U.S. at 90. "If accommodations for a constitutional right would cause significant changes within the prison environment, the courts should give deference to the prison officials who are responsible for safe, effective, and efficient administration of the prison system." *Bahrampour*, 356 F.3d at 975.

The available facts suggest that allowing Plaintiff to have unrestricted access to publications that contain nudity or sexual conduct would jeopardize jail security and the orderly operation of the jail as well as the jail administration's efforts to quell sexual harassment. Plaintiff has not disputed Defendant's claims regarding the third prong. *See Frost,* 197 F.3d at 358 (applying the same burden-shifting standard set forth under the first prong's common-sense analysis to the third prong analysis). The Supreme Court has stated that "[w]hen accommodation of an asserted right will have a significant 'ripple

1  effect' on fellow inmates or on prison staff, courts should be particularly deferential to the
2  informed discretion of corrections officials." *Turner,* 482 U.S. at 90. Absent controverting
3  evidence from Plaintiff, the asserted "ripple effect" here of disrupting jail security and
4  safety is sufficient to tip the third factor in Defendant's favor.

Finally, the Court examines whether the policy at issue is an exaggerated response to the prison's concerns. *Turner*, 482 U.S. at 90. On this prong, Plaintiff bears the burden of showing that there are obvious, easy alternatives to the regulation. *Mauro*, 188 F.3d at 1062. If Plaintiff can identify an alternative that fully accommodates the right at a *de minimis* cost to valid penological goals, the policy is an exaggerated response. *Turner*, 482 U.S. at 90-91. "If there are no obvious alternatives, and if the inmate only presents solutions that will negatively impact valid penological interests, then courts will view the absence of ready alternatives as evidence of a reasonable regulation." *Bahrampour*, 356 F.3d at 976. Plaintiff does not offer any obvious alternative other than allowing him to have the prohibited materials, which the Court has already determined is not a feasible option. Accordingly, this factor weighs in Defendant's favor.

For the foregoing reasons, the balance of the *Turner* factors weighs in Defendant's favor. Defendant has presented evidence that the rejection of the December 2016 and January 2017 issues of Cosmopolitan and the March 2017 issue of Marie Claire were based on the legitimate penological goals of maintaining jail safety and security and preventing sexual harassment within the jail and that allowing Plaintiff to possess prohibited materials would be counteractive to these goals. Plaintiff has failed to refute Defendant's evidence and has not shown that there remains a genuine issue for trial as to whether the rejection of the magazines violated his First Amendment rights. Accordingly, Defendant's Motion for Summary will be granted as to Plaintiff's First Amendment claim.[7]

. . .

. . .

---

[7] As such, the Court will not address Defendant's qualified immunity argument as to Plaintiff's First Amendment claim.

### D. Due Process Claim

#### 1. Legal Standard

Prisoners have a liberty interest in sending and receiving mail, and therefore they are entitled to some procedural due process when they are deprived of that mail. *See Krug v. Lutz*, 329 F.3d 692, 696-97 (9th Cir. 2003) (prisoner "has a liberty interest in the receipt of his subscription mailings sufficient to trigger procedural due process guarantees."); *Procunier v. Martinez*, 416 US. 396, 418-19 (1974) ("The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment [and] is protected from arbitrary governmental invasion."), *overruled on other grounds by Thornburgh*, 490 U.S. 401. Generally, when seizing a prisoner's mail, three baseline protections must be afforded: (1) notice to the inmate of the rejection, (2) a reasonable opportunity to appeal the rejection, and (3) review by an independent official. *See Martinez*, 416 U.S. at 418-19; *Krug*, 329 F.3d at 697 (independent, 2-level review); *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999) (notice).

#### 2. Discussion

Here, it is undisputed, and the record shows, that Defendant provided Plaintiff notice of the rejected publications in the November 8 and December 20, 2016 and February 14, 2017 Mail Rejection Notifications. (Doc. 54-1 at 7, 10, 13.) Also undisputed, and supported by the evidence, is the fact that Plaintiff appealed each of the rejections to the highest administrative level, and that the grievances and appeals were reviewed by independent officials. (Doc. 64 ¶¶ 4, 6, 8; Doc. 64 at 30–38, Doc. 64-1 at 1–5 (Pl.'s Ex. F); Doc. 64-1 at 11–18 (Pl.'s Ex. I), 24–32 (Pl.'s Ex. L).) Further, copies of the offending pages from the rejected magazines were preserved so that Plaintiff could pursue his administrative grievances. Accordingly, the record shows that the basic requirements of due process were met with respect to the magazine rejections at issue. The crux of Plaintiff's argument is that Defendant returned the rejected magazines to the publisher

before Plaintiff received the rejection notices, and therefore prevented "Plaintiff from effectively challenging the rejection of his magazines. . ." (Doc. 63 at 15.) In support of his argument that Defendant violated his due process rights by sending the rejected magazines back to the publisher before Plaintiff was able to challenge the rejections, Plaintiff relies on the Fourth Circuit's decision in *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105 (4th Cir. 1996). (Doc. 63 at 15.) However, that case concerned a publisher's due process rights to receive notice of a rejected publication, not an inmate's due process rights. *Montcalm*, 80 F.3d at 109. On the other hand, the Ninth Circuit has determined that "[i]f a meaningful post-deprivation remedy exists for an alleged deprivation of property, then that post-deprivation remedy is sufficient to satisfy the requirements of due process." *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002). Where the undisputed facts show that Plaintiff was given notice of the rejected magazines and an opportunity to appeal them to an independent jail official other than Defendant, the record does not support a due process violation. *See Krug*, 329 F.3d at 697–98 (withholding inmate mail must be accompanied by minimal procedural safeguards including notice and administrative review by an official other than the one who made the initial exclusion decision). Accordingly, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's due process claim.[8]

### III. Motions to Strike

Plaintiff moves to strike Defendant's Reply (Doc. 66) because "it's not summarily stated without argument" as required Local Rule of Civil Procedure 7.2(m)(2) and because it contains an unauthorized declaration and additional exhibits. (Doc. 69 at 2–3.) First, Rule 7.2(m)(2) governs objections to the admission of evidence, not reply briefs. There is no rule prohibiting Defendant from presenting arguments in her reply brief as long as they do not present new information. The Court has reviewed Defendant's reply and finds that it appropriately addresses the arguments Plaintiff made in his response. Further, the Court

---

[8] As such, the Court will not address Defendant's qualified immunity argument as to Plaintiff's due process claim.

did not rely on or cite to the declaration or exhibits attached to Defendant's reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (the district court should not consider new evidence presented in a reply to a motion for summary judgment unless the non-movant was given an opportunity to respond). Accordingly, Plaintiff's Motion to Strike Defendant's reply will be denied.

Plaintiff also moves to strike Defendant's Response to Plaintiff's Statement of Facts (Doc. 67) as an unauthorized filing. The Court did not rely on or cite to Defendant's Response to Plaintiff's Statement of Facts in its summary judgment analysis and will therefore deny Plaintiff's Motion to Strike.

**IT IS ORDERED:**

(1) The January 11, 2018 R&R of Magistrate Judge Bridget S. Bade (Doc. 21) is **accepted and modified** as follows:

(a) Defendants Elias, A6941, Miceli, Murphy, Hollingshead, Tijerina, Fisk, and Karas must answer Plaintiff's First Amendment claims in Counts One, Three, Five, and Seven of the FAC, and his due process claims in Counts Two, Four, Six, and Eight of the FAC.

(b) Plaintiff's official capacity claims against all Defendants are **dismissed**.

(c) Defendants Lieutenant 8013, Arpaio, and Penzone are **dismissed** for failure to state a claim.

(d) Because Defendant Anderson-Mata's Motion for Summary Judgment is being granted, the Court will modify the portion of the R&R recommending that Defendant Anderson-Mata answer the FAC, and the Court will instead dismiss Defendant Anderson-Mata from the action as discussed herein.

(2) Because the Court has determined that Plaintiff's FAC states a claim against Defendant Elias, the Court will **modify** the March 12, 2018 R&R of Magistrate Judge Bridget S. Bade (Doc. 36) and extend the deadline for serving Defendant Elias.

(3) The reference to the Magistrate Judge is withdrawn as to Defendant Anderson-Mata's Motion for Summary Judgment (Doc. 53), and the Motion is **granted**. Defendant Anderson-Mata is **dismissed** from the action with prejudice.

(4) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motions to Strike (Docs. 69, 70), and the Motions are **denied**.

(5) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 20), this Order, the January 11, 2018 R&R (Doc. 21), and both summons and request for waiver forms for Defendants Elias, A6941, Miceli, Murphy, Hollingshead, Tijerina, Fisk, and Karas.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendants pursuant to Rule 4(e)(2); and

(b) within 10 days after personal service is effected, file the return of service for Defendants, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendants. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendants pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) All other matters in this action remain with the Magistrate Judge for disposition as appropriate.

Dated this 22nd day of February, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge